UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JUSTIN THOMAS MORALES, <br><br> Movant, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | 4:20-CV-04112-KES <br><br> REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is before the court on the *pro se* motion of Justin Thomas Morales to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. See Docket No. 1.[1] Respondent the United States of America ("government") has filed a motion to dismiss Mr. Morales' motion without holding an evidentiary hearing. See Docket No. 22. Mr. Morales resists the government's motion. See Docket No. 24. This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Judge.

---

[1] This opinion references documents filed in Mr. Morales' civil habeas file by citing to the docket number therein. References to documents in Mr. Morales' underlying criminal case, United States v. Morales, 4:16-cr-40124 (D.S.D.) are cited by inserting "CR" before the docket number of the document in the criminal case.

**FACTS**

**A.    Pretrial Proceedings**

On November 9, 2016, Mr. Morales was indicted in federal court along with Chase Logan Guzman on a single charge of conspiracy to distribute a mixture or substance containing methamphetamine.  See CR Docket No. 1. Mr. Morales made his initial appearance in federal court on this indictment on November 18, 2016, at which time the court appointed attorney Janet Olson to represent him.  See CR Docket Nos. 17 & 21.  He was detained at this time. See CR Docket Nos. 14 & 16.

On January 19, 2017, a superseding indictment was filed adding co-defendant Daniel Hunter Guzman; the charge against Mr. Morales did not change.  See CR Docket No. 49.  On April 25, 2017, Ms. Olson filed a motion to suppress the evidence seized at a traffic stop involving Mr. Morales and later-discovered evidence which derived from that stop.  See CR Docket No. 76 & 91. After several requests to continue, an evidentiary hearing was held on the suppression motion on August 16, 2017.  See CR Docket No. 97.

After supplemental post-hearing briefing, this court issued a report and recommendation to grant in part and deny in part the suppression motion on August 31, 2017.  See CR Docket No. 111.  Ms. Olson objected to portions of that recommendation.  See CR Docket No. 117.  The district court overruled those objections and adopted this court's recommendation with modification. See CR Docket No. 127.

On the same day the district court ruled on Mr. Morales' motion to suppress, the government filed an information notifying Mr. Morales that, pursuant to 21 U.S.C. §§ 851(a) and (b) it was going to seek increased punishment in the event of a conviction of Mr. Morales because of a prior drug possession conviction in the state of Kansas, Sedgwick County, dated November 23, 2004.  See CR Docket No. 128.

## B.     Trial and Sentencing

Mr. Morales availed himself of his right to a trial by jury beginning on February 5, 2018.  See CR Docket Following No. 180.  On February 7, 2018, the jury returned a verdict of guilty against Mr. Morales.  See CR Docket No. 186.

In preparation for the sentencing hearing, a draft presentence report ("PSR") was filed March 26, 2018.  See CR Docket No. 208.  The PSR set forth a mandatory minimum statutory term of imprisonment of 20 years and a maximum of life imprisonment.  Id. at p. 20.  The PSR set forth an advisory sentencing range under the United States Sentencing Guidelines ("USSG") of 360 months' imprisonment to life.  Id.

Ms. Olson filed objections to the draft PSR (CR Docket No. 219), and also a response to the government's § 851 information.  See CR Docket Nos. 217 & 218.  In her response to the government's § 851 information, Ms. Olson argued that the offense in question was a misdemeanor which was capable of being enhanced to a felony if a specific finding of recidivism were made by the sentencing judge.  See CR Docket No. 218.  Because the sentencing court made

no such finding, counsel argued the November 23, 2004, conviction from Sedgwick County, Kansas, could not be counted as a prior felony drug conviction.  Id.  Based on the same argument, counsel asserted in the objections to the draft PSR that Mr. Morales' criminal history points were overstated (because the conviction from Kansas was a misdemeanor, not a felony), that his mandatory minimum sentence should be 10 years instead of 20, and that both his statutory and USSG sentence should be less than stated in the PSR.  See CR Docket No. 219.

After these objections were lodged, a final PSR was filed.  See CR Docket No. 223.  The PSR continued to state the same statutory sentencing range:  a mandatory minimum sentence of 20 years and a maximum of life.  Id. at p. 20.  The PSR *increased* the advisory USSG range to life imprisonment.  Id.

A sentencing hearing was held on May 1 and 18, 2018.  See CR Docket No. 256 & 266.  At the May 1 hearing, Ms. Olson called Mr. Morales' Kansas lawyer related to the 2004 conviction to testify.  See CR Docket No. 256 at p. 8.  That lawyer testified that, although the crime to which Mr. Morales pleaded nolo contendre to in 2004 was a felony, the lawyer had recently filed a motion to withdraw that plea on the basis that the lawyer who had represented Mr. Morales in 2004 had been ineffective (he was disbarred shortly after representing Mr. Morales) and the crime was now classified as a misdemeanor.  Id. at pp. 8-23.  A hearing was granted on the motion in Kansas state court, but the court denied the motion.  Id. at p. 12.  That decision was appealed, but

the appellate court had not yet issued a decision at the time of the sentencing hearing on Mr. Morales' 2016 federal criminal case.  Id. at pp. 12, 23-24.

The court rejected Mr. Morales' argument, finding that the government had proved Mr. Morales was convicted of a drug felony in Kansas in 2004, and that the conviction was final.  Id. at p. 67.  The court stated the litigation that was currently ongoing in Kansas state court regarding that conviction constituted a collateral attack on the criminal judgment of conviction.  Id. Collateral attacks on criminal judgments do not change the final nature of the judgment.  Id.  Furthermore, the court held Mr. Morales had failed to show by a preponderance of the evidence that the 2004 Kansas conviction was obtained in violation of his constitutional rights.  Id. at pp. 67-68.  Based on the court's findings and conclusions, it held that the § 851 enhancement applied in Mr. Morales' federal sentencing.  Id. at p. 69.

The court then turned to resolving the numerous other objections that both parties had made to the PSR.  After resolving those objections, the court calculated Mr. Morales' USSG range to be life imprisonment based on a total offense level of 43 and a criminal history category of VI.  See CR Docket No. 256 at pp. 132-33.  Although the court emphasized Mr. Morales' extensive criminal history, based on counsel's argument that the Kansas crime for which Mr. Morales was convicted of a felony was now a misdemeanor under Kansas law, the court departed downward to a sentence of 360 months' imprisonment. Id. at pp. 134-35; CR Docket No. 245.  Mr. Morales filed a timely notice of appeal.  See CR Docket No. 248.

## C.     Appeal

Mr. Morales argued on appeal that the district court erred in denying his suppression motion and in admitting evidence at trial of uncharged conduct related to marijuana and firearms.  United States v. Guzman, 926 F.3d at 991, 999 (8th Cir. 2019).  As to sentencing, Mr. Morales argued the district court erred in calculating his base offense level under the USSG and in applying four USSG sentencing enhancements.[2]  Id. at 1000.  No issue was raised on appeal concerning the propriety or sufficiency of the government's § 851 information. The Eighth Circuit affirmed Mr. Morales' sentence and conviction in all respects.  Id. at 1003.

The Eighth Circuit issued its mandate on August 9, 2019.  See CR Docket No. 281.  Mr. Morales filed his motion pursuant to 28 U.S.C. § 2255 on August 3, 2020.  See Docket No. 1.  His motion is therefore timely.  See 28 U.S.C. § 2255(f) (establishing a one-year statute of limitations for § 2255 motions).

## D.     Claim Raised in this § 2255 Motion

Mr. Morales asserts the singular claim that his trial counsel was ineffective in failing to argue that the Kansas conviction recited in the government's § 851 information could not be used for sentence enhancement purposes under a "categorical approach."  See Docket No. 2 at p. 5.

---

[2] Mr. Morales argued the drugs attributed to him, which in turn determined his USSG base offense level, were calculated in error.  Guzman, 926 F.3d at 1000-01.  He also argued the court should not have applied USSG enhancements for possession of a dangerous weapon, using violence or threats of violence, and being an organizer or leader.  Id. at 1002-03.

6

Mr. Morales argues that his 2004 Kansas conviction does not constitute a "felony drug offense" predicate for purposes of 21 U.S.C. §§ 841(b)(1)(A) and 851(a) under Mathis v. United States, 136 S. Ct. 2243, 2247-48 (2016).  He asserts his lawyer was deficient in failing to raise this argument in contravention of the government's § 851 information.  Furthermore, he points out that *with* the § 851 information he was subject to a mandatory minimum sentence of 20 years while *without* the § 851 enhancement the mandatory minimum sentence would have been only 10 years.  See Docket No. 2 at pp. 14-15.  Because his mandatory minimum sentence was increased by 10 years as a result of his lawyer's allegedly ineffective representation, Mr. Morales asserts he was thereby prejudiced.  Mr. Morales seeks a full resentencing without application of the § 851 penalty enhancement.  See Docket No. 1 at p. 12.

The government responds that no court has applied the Mathis holding to an § 851 enhancement, so counsel was not deficient in failing to raise a Mathis argument in connection with Mr. Morales' sentencing.  The government also argues that, even if Mr. Morales' Mathis argument has some merit, he cannot show that he was prejudiced by counsel's failure to raise the issue at his sentencing because his USSG sentencing range and the sentence the district court actually imposed are both far in excess of either the 10- or the 20-year mandatory minimum sentence that might apply.

**DISCUSSION**

**A.    Scope of § 2255 Motions**

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners.  Davis v. United States, 417 U.S. 333, 343-44 (1974).  Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presenting logistical issues because the record in the underlying criminal case were often in a distant location.  United States v. Hayman, 342 U.S. 205, 212-16 (1952).  The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court.  Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  See 28 U.S.C. § 2255.  Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255.  Relief is available for only those errors which constitute a "fundamental defect which inherently results in

8

a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. United States v. Frady, 456 U.S. 152, 167-68 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). However, appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion such as the one here. See United States v. Campbell, 764 F.3d 880, 892-93 (8th Cir. 2014); United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue). Therefore, no procedural default analysis is required before examining petitioner's claims of constitutionally-deficient counsel.

**B.    Standard for Claims of Ineffective Assistance of Counsel**

The Sixth Amendment of the Constitution of the United States affords a criminal defendant the right to assistance of counsel in criminal cases. U.S. Const. amend. VI. The Supreme Court "has recognized that 'the right to counsel is the right to the effective assistance of counsel.' " Strickland v. Washington, 466 U.S. 668, 686 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)). Strickland is the benchmark case for determining if

counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.

Mr. Morales must satisfy the following test in order to show his counsel was constitutionally ineffective:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.  The petitioner must meet both prongs of the above test; if a court believes the petitioner has failed to show prejudice, the court need not analyze whether counsel's performance was deficient and vice versa.  Id. at 697.

The right to effective assistance of counsel guaranteed by the Sixth Amendment applies to all critical stages of criminal proceedings, including at sentencing.  Lafler v. Cooper, 566 U.S. 156, 165 (2012).  "Any amount of additional jail time [as a result of counsel's deficiencies] has Sixth Amendment significance."  Id. (cleaned up).  In order to show prejudice from an alleged error by counsel at sentencing, the habeas petitioner must show that there is reasonable probability he would have received a lesser sentence if counsel had not erred.  Id. at 167-68.  "The favorable sentence that eluded the defendant in the criminal proceeding appears to be the sentence he or others in his position would have received in the ordinary course, absent the failings of counsel."  Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002) (quoting state-court decision below, Missouri v. Hall, 982 S.W.2d 675, 680 (Mo. 1998)).  It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id. (citation omitted).  Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation.  Bobby v. Van Hook, 558 U.S. 4, 7-9 (2009).  American Bar Association standards and similar directives to lawyers are only guides as to what reasonableness of counsel's conduct is; they are not its definitive definition.  Id.  The Supreme Court distinguishes between those cases in which the new evidence "would barely have altered the sentencing profile presented to the sentencing judge," and those that would have had a reasonable probability of changing the result. Porter v. McCollum, 558 U.S. 30, 41 (2009) (quoting Strickland, 466 U.S. at 700).  It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44 (quoting Strickland, 466 U.S. at 693-94).  Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's

conduct falls within the range of reasonable professional conduct.  <u>Strickland</u>, 466 U.S. at 698.

**C.    Application of <u>Strickland</u> to Mr. Morales' Claim**

      **a.    <u>Mathis v. United States</u>**

In <u>Mathis v. United States</u>, Mathis' sentence for unlawful possession of a firearm was enhanced under the Armed Career Criminal Act (ACCA) because he had three prior convictions for a violent felony, including an Iowa conviction for "burglary."  <u>Mathis</u>, 136 S. Ct. at 2246-47.  Settled law established that a prior state court conviction for burglary qualified as a burglary under the ACCA for purposes of enhancing a federal defendant's sentence "if, but only if, its elements are the same as, or narrower than, those of the generic offense" of burglary.  <u>Id.</u> at 2247.  Settled law also established that generic burglary meant a crime containing "the following elements: an unlawful or unprivileged entry into . . . a building or other structure, with intent to commit a crime."  <u>Id.</u> at 2248 (quoting <u>Taylor v. United States</u>, 495 U.S. 575, 598 (1990)).

The Court explained that, to determine whether a prior conviction for burglary fits the definition of generic burglary under the ACCA, "courts apply . . . the categorical approach:  They focus solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case."  <u>Id.</u>  Distinguishing between elements of an offense and facts is central to the determination.  <u>Id.</u>

"Elements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction."  <u>Id.</u> (cleaned up)

(quotations omitted).  Elements must be proven beyond a reasonable doubt and found by a jury in order to convict the defendant.  Id.  At a plea hearing, the defendant must admit each element in order for the plea to be valid.  Id.

Facts, sometimes called "brute facts," by contrast, are "circumstances or events having no legal effect or consequence."  Id. (cleaned up) (quotations omitted).  They do not have to be "found by a jury nor admitted by a defendant."  Id.  Another term used to describe facts are "means," or "mere means."

Under the categorical approach, if the crime of conviction has *elements* that are the same as or narrower than the generic offense, it counts as a valid "crime of violence" under the ACCA.  Id.  But if the elements of the crime of conviction include conduct broader than the generic offense, it is not a qualifying prior conviction for purposes of sentence enhancement under the ACCA.  Id.  Under the categorical approach, courts are limited to comparing the elements of the offense of conviction—without regard to the facts or means of the crime—with the elements of the generic offense, in Mathis' case, burglary.  Id.  Thus, if the *elements* of the conviction are broader than the elements of generic burglary, the conviction cannot constitute a "crime of violence" under the ACCA, even if the actual facts of the defendant's crime of conviction *would* fit within the definition of generic burglary.  Id. at 2248-49.

The Court noted it had allowed a modified categorical approach allowing the sentencing court to look to a limited list of sources relevant to the crime of conviction if a statute had a "divisible structure."  Id. at 2249 (cleaned up).

13

A statute with a divisible structure is one that "list[s] elements in the alternative, and thereby define[s] multiple crimes." Id. Under these circumstances, the sentencing court may look to the indictment, jury instructions or the plea to determine which of the alternative substantive crimes the defendant was actually convicted of. Id. But the modified categorical approach is only applicable where a statute contains an alternative list of *elements*. It cannot be applied to a statute that lists alternative *means*. Id.

In Mathis' case, he had a prior Iowa conviction for burglary which covered conduct broader than that covered by generic burglary—in addition to criminalizing unlawful entry into a building or other structure like generic burglary, the Iowa statute also made it a crime to enter "vehicle[s]," which was a location not covered by generic burglary. Id. at 2250. The Court, with reference to Iowa state court opinions, held that the statute defined one crime, with one set of elements, while specifying multiple factual means of satisfying the locational element, only some of which were congruent with the elements of generic burglary. Id.

The district court had looked to Mathis' underlying conviction documents and determined he had actually burgled a structure. Id. The court then applied the ACCA enhancement by looking behind the elements of the state offense and examining state court documents that described Mathis' actual actions. Id. The Eighth Circuit affirmed, holding that whether a statute delineated alternative means of committing a crime, or alternative elements,

14

either circumstance would permit the sentencing court to "look behind" the statute itself and examine old record materials to determine what conduct the defendant had actually engaged in that was the basis of his conviction.  Id. The Supreme Court reversed.  Id. at 2253.

The Court stated it had "often held, and in no uncertain terms, that a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense."  Id. at 2251.  How a defendant actually committed the crime is not relevant.  Id.  That rule, the Court emphasized, applies whether the statute set forth a single means of committing the crime, or several alternative possible means of commission.  Id.  The state legislature's prerogative to list alternative means in a single statute "gives a sentencing court no special warrant to explore the facts of an offense, rather than to determine the crime's elements and compare them with the generic definition."  Id.

The Court held that the modified categorical approach serves "solely" to "identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of [the elements] opaque."  Id. at 2253.  Lower courts are not allowed to repurpose the modified categorical approach to discover whether the *facts* of a defendant's prior conviction would match the generic definition under the ACCA.  Id. at 2254.

The Mathis Court's exasperation with lower courts improperly evading application of the categorical approach's comparison of elements only is palpable in the opinion.  The Court stated its holding had been the law for

15

more than a quarter of a century.  Id. at 2251 (citing Taylor v. United States, 495 U.S. 575, 601 (1990)).  The Court stated Taylor's holding "became a mantra in our subsequent" decisions.  Id.  The Court stated it had "held, over and over" that courts are to compare elements only and disregard specific facts of a crime.  Id. at 2257.  "At the risk of repetition (perhaps downright tedium)," the court laid out examples from its recent opinions:

> --the ACCA "refers to predicate offenses in terms not of prior conduct but of prior 'convictions' and the 'element[s]' of crimes." Shepard v. United States, 544 U.S. 13, 19 (2005).

> --"[W]e have avoided any inquiry into the underlying facts of [the defendant's] particular offense, and have looked solely to the elements of [burglary] as defined by [state] law."  James v. United States, 550 U.S. 192, 214 (2007).

> --"[W]e consider [only] the *elements of the offense*[,] without inquiring into the specific conduct of this particular offender." Sykes v. United States, 564 U.S. 1, 7 (2011).

> --"The key [under ACCA] is elements, not facts."  Descamps v. United States, 570 U.S. 254, 261 (2013).

Mathis, 136 S. Ct. at 2251-52.

Further, the Mathis Court emphasized it has hewed to the same precedent in cases outside the ACCA, such as in immigration cases, where it has stated a sentencing judge "must look at the 'formal element[s] of a conviction[,] rather than to the specific facts underlying the crime,' in deciding whether to deport an alien for having a prior conviction for an 'aggravated felony.' "  Id. at 2251-52 n.2 (quoting Kawashima v. Holder, 565 U.S. 478, 482-83 (2012)).

The Court articulated three reasons in support of its precedent.  Id. at 2252.  First, Congress intended application of the categorical approach by using the language "previous convictions" instead of "an offense committed." Id.  This legislative choice of words, the Court held, indicated sentencing courts should only ask whether "the defendant had been convicted of crimes falling within certain categories," and not ask about the specific facts behind a conviction.  Id. (quoting Taylor, 495 U.S. at 600).

Second, the Court in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), held that the Sixth Amendment forbids sentencing courts from finding facts that served to increase a defendant's punishment, except for finding "the simple fact of a prior conviction."  Mathis, 136 S. Ct. at 2252.  That means a sentencing court may only look to the elements of the statute of conviction, it cannot scour through the defendant's underlying state file trying to "find facts" which would place the defendant within the ACCA's definition of generic burglary and thereby increase his punishment.  Id.

Third, statements of facts in an underlying record, the proof of which are unnecessary to the establishment that a crime has been committed, are unreliable.  Id. at 2253.  Because the facts are not required for conviction, at a trial and, even more, at a plea hearing, a defendant may have zero incentive to contest facts which do not affect the outcome of his case, and he may even be precluded from doing so by the court.[3]  Id. at 2253.  Furthermore, a prosecutor

---

[3] Remember, the Mathis Court was construing a statute which listed alternative *means* of committing the crime of burglary, *not* alternative *elements*. The whole question was whether the modified categorical approach could be

or judge's inaccurate statement of means (as opposed to elements) are likely to go uncorrected. Id. Parties have little incentive to pursue an appeal issue that will not affect the outcome of the case. Id.

The Court concluded by stating that Congress' use of the term "convictions" in the ACCA still supports an elements-based inquiry and "directly refutes" a fact-based approach. Id. The Court stated its decision in Descamps "made clear that when the Court had earlier said (and said and said) 'elements,' it meant just that"; it did not mean "means." Id. at 2255.

**b.    Application of <u>Mathis</u> to Mr. Morales' Facts**

At the time of Mr. Morales' sentencing on May 18, 2018, sections 841(b)(1)(A) and 851 of Title 21 increased the penalty for a current drug felony if the defendant had a prior conviction for a "felony drug offense." [4] See 21 U.S.C. §§ 841(b)(1)(A) and 851 (2012). A "felony drug offense" pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 802(44) is a conviction that "is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to

---

applied when the alternatively listed things were means, not elements. <u>Mathis</u>, 136 S. Ct. at 2253.

[4] The First Step Act of 2018 ("FSA"), Pub. L. No. 115-391, § 401, 132 Stat. 5194, 5220-21 (Dec. 21, 2018), changed the language of 21 U.S.C. § 841(b)(1)(A) from "felony drug offense" to "serious drug felony." Cases predating the FSA discuss the phrase "felony drug offense" while cases arising after passage of the FSA discuss "serious drug felony." At the time Mr. Morales was sentenced on May 18, 2018, the operative term was "felony drug offense" under the old version of the statute.

narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44).

Mr. Morales argues that, applying the categorical approach required by Mathis, the drugs made illegal under Kansas' controlled substances statutory scheme are more broad that the federal schedule of controlled substances because, for example, Kansas criminalizes the possession or use of salvia divinorum (a.k.a. salvinorum), while federal law does not. See Docket No. 2-1 at p. 3 (showing the version of Kansas Statutes Annotated § 65-4105(d)(29) supplied by Mr. Morales in support of his § 2255 motion). Thus, argues Mr. Morales, the Kansas conviction is overbroad as compared to the federal laws, it is not divisible and therefore his Kansas conviction cannot be used for sentencing enhancement under § 851. He alleges his counsel was ineffective for failing to so argue at his sentencing hearing.

The government asserts incorrectly that Mathis only applies to cases arising under the Armed Career Criminal statute, not to § 851 enhancements. The Supreme Court itself has applied the Mathis/Taylor categorical analysis in the immigration context. Kawashima, 565 U.S. at 482-83.[5] The government also makes the broad assertion that "there is no authority extending Mathis to the application of § 851 enhancements." See Docket No. 23 at p. 6.

_____

[5] The Kawashima case pre-dated Mathis, so it did not cite Mathis by name, but rather the predecessor of Mathis, Taylor v. United States, 495 U.S. 575 (1990). Kawashima, 565 U.S. at 482-83. As the Mathis Court itself was at pains to point out, however, the analysis it announced in Mathis had been the established law since the Taylor decision was issued in 1990. Mathis, 136 S. Ct. at 2251-52.

The government's statement is rather sweeping—and erroneous.  The Seventh Circuit has issued at least two opinions applying <u>Mathis</u> in the context of an § 851 enhancement.  <u>See</u> <u>United States v. Delatorre</u>, 940 F.3d 938, 948-52 (7th Cir. 2019); and <u>United States v. Elder</u>, 900 F.3d 491, 497-502 (7th Cir. 2018).  Furthermore, the Eighth Circuit applied <u>Mathis</u> to determine whether a state court conviction constituted a "felony drug offense" under 21 U.S.C. § 802(44) in <u>United States v. Boleyn</u>, 929 F.3d 932, 935-38 (8th Cir. 2019).  The relevant inquiry presented by Mr. Morales' habeas petition is *precisely* whether his Kansas state conviction constitutes a "felony drug offense" under § 802(44).  It is simply disingenuous of counsel for the government to suggest that there is no authority for the proposition that <u>Mathis</u> has application to § 851 enhancements.

If there were any inkling of a hesitation otherwise, the Eighth Circuit addressed the issue directly in <u>United States v. Oliver</u>, 987 F.3d 794, 805-08 (8th Cir. 2021).  In <u>Oliver</u>, the Eighth Circuit not only applied <u>Mathis</u> to a defendant's argument that a state court conviction did not constitute a "serious drug felony" for purposes of § 851, but the court actually *reversed* on that basis after applying the <u>Mathis</u> analysis.  <u>Id.</u>

Granted, the <u>Oliver</u> decision was issued February 11, 2021, approximately one month *after* government counsel filed its brief in this case.  However, as of the writing of this opinion approximately one month post-<u>Oliver</u>, government counsel took no steps to correct the record or bring the <u>Oliver</u> case to the court's attention.

Furthermore, almost a year ago other government counsel from the same government office filed written briefs with this court on the application of Mathis to a § 851 enhancement, including the Elder case from the Seventh Circuit discussed above which is directly on point.  See Sorenson v. United States, 4:19-cv-4190, Docket No. 28 at pp. 13, 17 (D.S.D. Apr. 28, 2020).[6] Ms. Olson's October 28, 2020, affidavit in response to Mr. Morales' allegation, suffers from the same infirmity when she asserts she is not aware of any authority extending Mathis to the analysis of § 851 enhancements.  See Docket No. 13 at p. 3, ¶ 9.  At least Ms. Olson qualified her statement by stating she "f[ou]nd no" authority applying Mathis in the context of a § 851 enhancement, whereas the government states baldly that no authority exists.

So, Mr. Morales' argument that counsel was deficient in failing to raise an argument against use of his Kansas conviction to enhance his punishment pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851 is far from frivolous.  Were the court to futher delve into the deficient-conduct part of the Strickland test, it would be necessary to read Kansas court decisions interpreting K.S.A. § 65-104 to determine if the statute sets forth elements or alternative means and to determine if the statute is divisible.[7]  Mathis, 136 S. Ct. at 2256.  However,

---

[6] And, of course, counsel's sweeping statement that "no authority" exists ignores this court's own admittedly nonfinal decision in the Sorenson case issued on September 22, 2020, well before counsel made the statement that no authority exists.  Sorenson, Docket No. 42 (D.S.D. Sept. 22, 2020).

[7] In addition, the court would have to compare the version of K.S.A. § 65-4105 in existence in 2004 with the federal drug schedules in effect in 2004.  The copy of K.S.A. § 65-4105 supplied by Mr. Morales is *not* the version in effect in 2004.  Rather, it is a version that was effective in 2011.  The particular drug

because the court finds Mr. Morales fails to establish prejudice, the court instead turns to an examination of that prong of the <u>Strickland</u> test.  If a habeas petitioner fails to show prejudice, the court can address the prejudice prong of the test without making a conclusive determination regarding counsel error.  <u>Strickland</u>, 466 U.S. at 695.

As discussed above, in order to show prejudice, Mr. Morales must show a reasonable probability that, had counsel not erred, he would have received a lesser sentence than the 360-month (30-year) sentence he did receive.  <u>Lafler</u>, 566 U.S. at 165-68.  This, the court concludes, he cannot do.

Although the government's filing of an § 851 information against Mr. Morales increased his statutory mandatory minimum sentence from 10 years to 20 years, the USSG provided for a sentence of life imprisonment.  <u>See</u> CR Docket No. 223 at p. 20 (final PSR).  The district court actually departed or varied downward from that USSG and imposed a sentence of 360 months or 30 years.  <u>See</u> CR Docket No. 245.  The sentence actually imposed by the court exceeded the statutory mandatory minimum sentences applicable to Mr. Morales by at least 10 years, with or without the § 851 enhancement.  <u>Compare</u> CR Docket No. 245, <u>with</u> CR Docket No. 223 at p. 20.  Thus, the sentencing court did not rely on the statutory mandatory minimum to

---

Mr. Morales relies upon to argue that §65-4105 is overbroad—salvia divinorum—was not criminalized under the version of § 65-4105 that was in effect at the time of his 2004 sentencing.  It may be that the 2004 version of the Kansas statute was overbroad in other ways.  However, the court does not engage in the comparison of the Kansas statute and federal statutes in effect in 2004 because, as indicated above, the court concludes Mr. Morales has not shown prejudice.

determine Mr. Morales' sentence.  An argument by counsel which resulted in a lower mandatory minimum sentence would not have affected Mr. Morales' USSG calculation or the court's ultimate sentence.  He has not, therefore, proved prejudice.  There is no reasonable probability that, absent counsel's error, the resulting sentence would have been any different.

Another district court in the Eighth Circuit encountered nearly identical facts and arguments in Prewitt v. United States, Case No. 4:13CR00329-16BSM, 2016 WL 11647738 (E.D. Ark. Apr. 15, 2016).  In Prewitt, the petitioner filed a § 2255 motion alleging his trial counsel had been ineffective in advising him to accept a plea agreement that included an § 851 enhancement. Id. at *2.  Prewitt argued that counsel should have advised him to accept an earlier alternate plea offer that did not contain the § 851 enhancement.  Id. The § 851 enhancement increased Prewitt's mandatory minimum sentence from five years to 10 years.  Id.  But his USSG range was 188 to 235 months' imprisonment, far greater than the 60-month mandatory minimum without the enhancement and less than the 120-month mandatory minimum with the enhancement.  Id.  Relying on Lafler and Missouri v. Frye, 566 U.S. 134 (2012), the district court held that Prewitt could not show Strickland prejudice.  Id.  At sentencing, the government recommended a sentence of 120 months' imprisonment, which was 68 months below the bottom of the USSG range, but stated it would never under any circumstances recommend a sentence any lower.  Id.

Mr. Morales, like the petitioner in <u>Prewitt</u>, simply has not shown prejudice.  His USSG range was far above the mandatory minimum sentence, with or without the § 851 enhancement.  The actual sentence he received was far above the mandatory minimum sentence, with or without the § 851 enhancement.  This is one of those cases where counsel's error "would barely have altered the sentencing profile presented to the sentencing judge," and, thus, there is no reasonable probability that the result would have changed. <u>Porter</u>, 558 U.S. at 41 (quoting <u>Strickland</u>, 466 U.S. at 700).  Counsel's error in failing to raise a <u>Mathis</u> argument, if there was error, did not prejudice Mr. Morales.

## D.   Evidentiary Hearing

"While '[a] petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief,' no hearing is required 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" <u>New v. United States</u>, 652 F.3d 949, 954 (8th Cir. 2011) (quoting <u>Anjulo-Lopez v. United States</u>, 541 F.3d 814, 817 (8th Cir. 2008)).

"A district court may deny an evidentiary hearing where (1) accepting the petitioner's allegations as true, the petitioner is not entitled to relief, or (2) 'the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" <u>Guzman-Ortiz v. United States</u>, 849 F.3d 708, 715 (8th Cir. 2017) (quoting

United States v. Sellner, 773 F.3d 927, 929-30 (8th Cir. 2014)).  Even assuming the truth and legal accuracy of Mr. Morales' arguments, he is not entitled to relief as a matter of law.  Accordingly, this court recommends no evidentiary hearing be held.

### CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends that the government's motion to dismiss [Docket No. 22] be granted in its entirety and that Mr. Morales' motion pursuant to § 2255 be denied and this case be dismissed with prejudice.

### NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 8th day of March, 2021.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge

25